**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| THE HEIDI GROUP, INC. | § | |
|     Plaintiff | § | |
| | § | **NO. 1:22-cv-00294-DAE** |
| VS. | § | |
| | § | |
| TEXAS HEALTH AND HUMAN | § | |
| SERVICES COMMISSION;  et. al., | § | |
| Defendants | § | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS CONSOLIDATED MOTION TO COMPEL**

The State Defendants' Response rests primarily on a single, overriding contention: that an eleventh-hour document production renders HEIDI's Consolidated Motion to Compel ("MTC") premature and/or moot. It does not.

## I. The Motion Is Not Premature.

### A.  Chronology of State Defendants' Discovery Avoidance:

The Response portrays this Motion as the product of impatience. The contemporaneous record tells a different story. The sequence of events is as follows[1]:

**Pre-5/25/26 Events – leading up to the final notice the MTC would be filed imminently:**

- **December 14, 2025:** HEIDI serves Requests for Production ("RFPs") and interrogatories ("ROGs") on HHSC and OIG.

- **February 20, 2026:** State Defendants respond. HHSC and OIG assert numerous privileges and other objections, but no log or withholding statement, and no documents are produced.

- **April 7, 2026** — Watt emails Winkelman serving four draft Motions to Compel (OIG RFPs, OIG ROGs, HHSC RFPs, HHSC ROGs) and requesting a meet-and-confer, with a stated intent to either resolve the disputes or file the motions within two weeks. (This was Plaintiff's deadline to respond to State Defendants' discovery requests. The draft Motions to Compel were served contemporaneously with Plaintiff's discovery responses and Plaintiff's proposed motion and order for Protective Order.)

- **April 8, 2026** — Winkelman responds, asking to first discuss with his clients (hoping to do so Thursday or Friday), and suggesting a call the week of April 13–15.

---

[1] Exhibits 5 and 5-A.

Plaintiff's Reply in Support of Its Consolidated Motion to Compel          Page 1 of 16

- **April 14, 2026** — Meet-and-confer video conference occurs. Winkelman follows up by email, committing to respond to the Motions to Compel by Friday, April 24.

- **April 28, 2026** — Watt emails Winkelman following up, noting that Winkelman was supposed to respond to the Motions to Compel by the prior Friday (April 24) and has not done so.

- **April 29, 2026** — Winkelman responds, citing a stomach bug/food poisoning that put him out of commission for several days, and **asks for an extension through the weekend** (i.e., through May 3) on the Motions to Compel.

- **April 30, 2026** — Watt grants the extension through the weekend, acknowledges the illness, and confirms he will wait for Winkelman's response.

- **May 5, 2026** — Winkelman emails at 12:36 a.m., citing an emergency mandamus issue in another case that consumed his weekend. States he will address the Motions to Compel **"later this afternoon" (May 5).** No MTC response was received that day, or ever, prior to the Consolidated Motion being filed.

- **May 8, 2026** — Watt emails Winkelman asking for the status of both the Motion for Protective Order and the Motions to Compel. No response from Winkelman regarding the MTC was ever received.

**5/25/26 and later:**

- **May 25, 2026:** Watt emails Winkelman giving written notice of intent to file the Consolidated Motion to Compel and requests Winkelman's position on the accompanying Motion for Leave to Exceed Page Limit by 5:00 p.m. the following day.

- **May 26, 2026:** Winkelman requests that HEIDI "hold off" on filing the MTC and commits to responding by the end of the week. HEIDI agrees to delay until Friday, May 30, but asks Winkelman to "go ahead and respond on whether you oppose the Motion for Leave," just in case "we haven't reached agreement by Friday." Winkelman agrees.

- **May 29 – June 7, 2026:** Winkelman emails HEIDI's counsel on May 29, June 4, and June 8 regarding other case matters. He does not mention the Motion to Compel in any of these communications and provides no response as promised.

- **June 8, 2026:** Having received no response nine days after the agreed deadline, HEIDI files the Consolidated Motion to Compel.

- **June 15, 2026:** The Response to the Motion to Compel is due under Local Rule CV-7. Winkelman requests a four-day extension to June 19, which Watt grants.

- **June 17, 2026 (Wednesday evening):** OIG produces 18,190 pages of documents — during the extension period Defendants requested, eleven days after the Motion was filed, and with HHSC's production still forthcoming.

- **June 19, 2026:** Defendants file their Response, describing the Motion as "completely unnecessary" and attributing the filing to a failure of communication caused by Winkelman's medical absence.

The Response asserts that Winkelman "was out of the office for medical reasons . . . and unable to respond to emails indicating Plaintiff intended to file its Motion until after it was filed." (Resp. at 2 n.2.) This characterization is inconsistent with the foregoing record: the May 26 email in which Winkelman asked HEIDI to delay filing was itself sent during the period described as a medical absence, and Winkelman corresponded with HEIDI's counsel on at least three subsequent dates (May 29, June 4, June 8) without addressing the Motion to Compel.

### B. No Prior Mention of Defendants' "Rolling Production" or Commitment

The Response repeatedly asserts that the MTC is premature because Defendants had committed to producing all investigatory files on a rolling basis once the Confidentiality and Protective Order ("CPO") was entered. The written record does not support that contention. Not only is there no such mention of that intent in any of the MTC emails attached as **Exhibit 5-A** but a search of *all* email exchanges between counsel failed to reveal any such contention. **Exhibit 5**. That contention also is not supported by the oral record. Prior to the filing of the MTC, Defendants never committed to producing all investigative files or any rolling or otherwise scheduled production. **Exhibit 5** (Declaration of Edward Watt). They still have not, as addressed below.

### II. The Motion Is Not Moot.

Mootness requires that there is no longer a "live controversy" such that "it is impossible for a court to grant 'any effectual relief whatever to the prevailing party.'" *Knox v. SEIU, Local 1000,* 567 U.S. 298, 307 (2012). A partial post-motion production[2] by one of two Defendants that leaves unresolved numerous issues raised in the MTC does not satisfy that standard. Only partial, belated, and virtually unusable production from OIG has occurred, no production from HHSC has

---

[2] Defendants cite *Byrd v. U.S. Silica Co.*, No. 4:22-CV-875-SPM, 2024 WL 6881526 (E.D. Mo. June 21, 2024), for their mootness proposition. However, *Byrd* involved production underway *before* the motion to compel was filed. Here, the production occurred *after* the motion was filed — indeed, during a defense-requested extension of the response deadline — and is plainly a consequence of the motion, not a basis for finding it unnecessary.

been provided,[3] questions of applicability and waiver of various privileges remain, and Defendants continue to reserve the right to withhold unidentified documents based on various privileges or its boilerplate and other objections that HEIDI contends are either inapplicable and/or were waived.

A. **Defendants' Document Production is Inadequate, incomplete, and or non-existent:**

Defendants' Response focuses almost entirely on the post-MTC production of documents by OIG. All that is said about production from HHSC is that it is 'forthcoming.' As of the filing of this Reply, 'forthcoming' remains the entirety of Defendants' illusory representation on the subject — undefined as to timing, scope, format, and completeness. Combined with Defendants' express reservation of the right to withhold documents based on privilege — a reservation that sits in direct tension with their simultaneous representation that no documents are being withheld on that basis[4] — the Response is no more informative than Defendants' February 20 objections.

OIG finally produced its first tranche of documents on June 17, 2026. The production consists of 18,190 pages of PDFs and 66 native files. Although the RFPs to both OIG and HHSC contained requests for all ESI – **Exhibits 5-B and 5-C** – no ESI was provided. The PDFs are titled solely by Bates number. No load files or other usable form of ESI accompany the production. No metadata fields are provided for the PDF documents. No custodian identification, date fields, or RFP cross-referencing is included. No parent-child information for emails and attachments is provided. The non-existent ESI renders the production virtually unusable.[5]

---

[3] At 3:03 this afternoon (Friday, June 26, 2026), Defendants produced (via download link) approximately 45,000 pages of HHSC documents. Given today's deadline for Plaintiff's Reply, HEIDI has no means of examining what has been produced or how it might impact this Reply, other than that *something* has now been produced by HHSC.

[4] *See* Section II-B, *infra*.

[5] *See* Fed. R. Civ. P. 34(b)(2)(E)(ii) (ESI must be produced "in a form or forms in which it is ordinarily maintained or in a reasonably usable form"); *PNC Bank, N.A. Columbia Hous. SLP Corp. v. 2013 Travis Oak Creek GP, LLC*, 2017 U.S. Dist. LEXIS 238740, at *5 (W.D. Tex. July 13, 2017) ("the mode of production should preserve the functional utility of the electronic information produced. . . .[T]his normally requires (1) preserving the format of the ESI and (2) providing sufficient information about the context in which it is kept and used.") (*citing, McKinney/Pearl Rest., L.P. v. Metro. Life Ins. Co.*, 322 F.R.D. 235 (N.D. Tex. 2016) ("A file that is converted to

Moreover, OIG also continues to assert its privilege and non-privilege objections, while simultaneously reserving the right to withhold documents based on those objections.[6]

**B. The MTC's Dispute as to the Applicability and/or Enforceability of Defendants' Privilege Claims Remains a Live Controversy in Need of Prompt Resolution**

1. *The Privilege Issues Remain Live:*

Defendants have asserted three categories of privilege: Government Code 544.0259 investigative privilege, deliberative process privilege, and attorney-client privilege / work-product doctrine. The MTC contested both the applicability and enforceability (waiver) of all three. These disputes remain live, will govern the case going forward, and are in need of judicial resolution.

*2. The Government Code Investigative Privilege: Section 544.0259(e) Does Not Apply in This Federal Civil Rights Case.*

Defendants contend they are not currently withholding documents based on the Texas Government Code's investigative privileges, and HEIDI takes Defendants at their word on that representation. But the absence of current withholding on the basis of that privilege does not render the dispute as to its applicability and enforceability moot. Defendants continue to assert the provision applies as a matter of law, they are using it as the basis for Confidential designations on documents already produced, and the CPO expressly reserves the dispute for judicial determination. Moreover, until the issue is resolved, the CPO places stringent limitations on how information marked as Confidential based on that privilege can be used in the litigation, including who can see it, whether it can be used in pleadings without sealing the record, and how it can be used in depositions. The issue remains live and ripe for resolution.

Defendants argue that because this case involves supplemental state-law claims, the Texas investigative privilege statute applies to documents "relating to" those claims. (Resp. at 6–7.) The

---

another format solely for production, or for which the application metadata has been scrubbed or altered, is not produced as kept in the ordinary course of business.").

[6] *See* Section II-B, *infra*.

Fifth Circuit, however, has held unambiguously that "[f]ederal common law, not state law, governs questions of privilege in cases founded on federal question jurisdiction." *Willy v. Admin. Review Bd.*, 423 F.3d 483, 495 (5th Cir. 2005). This case is founded on federal-question jurisdiction.

To circumvent *Willy,* Defendants say the state privileges apply even in federal-question cases where state-law causes of action are joined and the evidence relates "only to the state-law claims." (Resp. at 6.) Plaintiff agrees with this contention. But the documents at issue are not relevant exclusively to the state-law claims. The entire HHSC file, the OIG investigation file, the internal communications about contract termination, the Dacus-Morgan communications, and virtually all other documents in the case are central to HEIDI's § 1983 claims for Fourth Amendment conspiracy, Equal Protection, Due Process, and Free Exercise. Where evidence is common to both, federal privilege law governs.[7] Defendants cite no authority to the contrary.

Defendants next attempt to frame the issue in a manner that artificially divorces HHSC and OIG as entities from their officials. The Response states that "Plaintiff has no federal claims against the entities, HHSC and OIG directly." (Resp. at 7 n.6.) This attempted separation has no merit in law or fact. Due to sovereign immunity, Plaintiff was required to frame the federal (and Texas constitutional) claims against HHSC and OIG as claims against their commissioners in their official capacities for equitable remedies. But due to statutory waivers of sovereign immunity, the claims against those entities for state statutory violations could be asserted directly against the entities without having to sue them through their commissioners.

---

[7] The district court cases Defendants cite themselves acknowledge that state privilege law applies only where evidence relates exclusively to state-law claims. *Garza v. Scott & White Mem'l Hosp.*, 234 F.R.D. 617, 625 (W.D. Tex. 2005) ("although the Court has no difficulty with the general proposition that federal privilege law should trump application of state law when a particular piece of evidence is relevant to both federal and state claims, that is not the case here."); *King v. VHS San Antonio Partners, Inc.*, 2017 U.S. Dist. LEXIS 224064 *7, 10 (W.D. Tex. Dec. 7, 2017) (follows the lead of "other courts in this circuit" by applying federal privilege law where "the evidence at issue relates to both federal and state-law claims").

HEIDI's § 1983 claims against the individual Defendants in their official capacities are, in law, claims against the agencies those individuals serve[8] — meaning the discovery obligations of those agencies are coextensive with the claims against their officials. The discovery records of those agencies are directly implicated by the federal claims regardless of how the entity-vs.-official distinction is drawn in the caption. Defendants know this. The RFPs and ROGs at issue were directed to each entity Defendant **and** its commissioner in her official capacity. When Defendants responded, they did so for each entity Defendant **and** its commissioner in her official capacity. For Defendants to claim that the federal claims were not against the entity Defendants is disingenuous.

The CPO does not resolve these issues. The CPO expressly provides that "[t]he parties dispute whether Texas Government Code §§ 544.0259 and 544.0110 apply" and reserves the issue for judicial determination.[9] The Court should resolve it now.

### 3. The Deliberative Process Privilege Does Not Shield the Investigation.

The deliberative process privilege is asserted by OIG across 84 of 136 RFPs and by HHSC as to 15 of 136 RFPs. MTC p.17. The Response does not even mention this privilege, much less address any of the arguments asserted in the MTC as to why it is inapplicable and was waived. MTC pp. 6-11. Notwithstanding this silence, Defendants artfully reserve the 'right to valid claims of privilege' while committing to produce only 'certain documents that may otherwise be privileged in order for this matter to progress.' Resp. at 7. That reservation is untethered to any identified document, any legal standard, or any judicial oversight mechanism — an open-ended privilege claim that Defendants may deploy at will against any document they choose not to produce. HEIDI is entitled to a ruling now — before documents are withheld, depositions begin, and Defendants

---

[8] *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent").

[9] CPO, Dkt. #72, at 1 n.2.

invoke this reservation <mark>to block examination of the very investigation that destroyed HEIDI's contracts and reputation</mark>.

### 4. All Privilege Objections, including Attorney-Client and Work-Product, Have Been Waived by Failure to Log.

Defendants argue that a privilege log is not yet required because no documents have been "withheld." (Resp. at 8.) This argument inverts the Rule. Rule 26(b)(5)(A) provides that a party "withholding information otherwise discoverable by claiming that the information is privileged . . . must" describe the withheld materials in a privilege log.[10] The obligation attaches "at the time of withholding" — meaning when the party decides to assert privilege rather than produce.[11]

Defendants' February 20, 2026 discovery responses asserted privilege against virtually every RFP. OIG asserted the AC privilege for 33 RFPs and the WP doctrine as to 85 while HHSC asserted AC privilege and WP doctrine for 15 RFPs. MTC pp. 17-18. No documents were produced; all were withheld. No schedule for production (rolling or otherwise) was provided. No protective order was sought to preserve objections. No document was logged, and no specified withholding statement was given. Defendants just objected and produced nothing. That a portion of the requested documents are now being produced under the CPO does not retroactively cure the withholding deficiency that occurred in February.

HEIDI faced precisely the same situation when responding to Defendants' discovery requests and responded by seeking and obtaining the Protective Order that now governs this litigation. Defendants contributed to that process only after it was raised and driven by Plaintiff,

---

[10] Fed. R. Civ. P. 26(b)(5)(A) ("When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that . . . enables other parties to assess the claim.").

[11] *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 507 (N.D. Tex. 2016) ("The obligation to provide a privilege log arises at the time of withholding, not at the time the court resolves the dispute.").

and Defendants are not protected by it with respect to their own privilege assertions or production requirements.[12] The failure to log documents withheld on attorney-client and work-product grounds in February 2026 constitutes waiver under Rule 26(b)(5)(A) — and the belated invocation of a Protective Order that Defendants neither sought nor substantially shaped does not cure it.

> *5. The Failure to Log Attorney-Client and Work Product Claims Is Not Excused by the Absence of a Protective Order.*

Defendants' Response implies they could not have produced documents before the Court entered the May 27, 2026 CPO and that following entry it has commenced a rolling production. This contention is without merit. HEIDI acknowledges two legitimate points that inform this analysis. First, PHI and PII concerns provided genuine grounds for deferring document production until a CPO was in place. The documents at issue in this healthcare-related litigation are permeated with protected health information and personally identifiable information, and producing them without confidentiality protections in place would have been inappropriate. HEIDI made that same argument in its Motion for Protective Order and does not dispute that it applied equally to Defendants' production obligations. Second, once HEIDI raised the CPO issue and drafted an initial proposed order, Defendants cooperated in negotiating its terms. HEIDI acknowledges that cooperation and does not suggest otherwise.

These concessions, however, do not excuse Defendants' failure to log their attorney-client and work product assertions, for three independent reasons. First, the obligation to log documents withheld on privilege grounds is distinct from the obligation to produce documents. Rule 26(b)(5)(A) requires a party withholding information based on a privilege claim to describe the withheld materials in a manner that enables the opposing party to assess the claim. That obligation

---

[12] CPO Exhibit A addresses the production schedule and protocols only for Plaintiff; Defendants did not seek or obtain any similar protective order.

is triggered by the decision to withhold — not by the act of producing. PHI and PII concerns justify deferring the handing over of documents; they have no bearing on the separate obligation to identify what is being withheld on privilege grounds and why. A privilege log does not require producing a single page of PHI or PII. Defendants could have served one on February 20 identifying withheld documents by general category, date range, custodian, and privilege basis without disclosing any protected information. They did not.

Second, HEIDI's Motion for Protective Order argued that conducting privilege review before PHI and PII protections were in place would require reviewing thousands of documents twice — an unreasonable burden that justified deferring privilege review until after the CPO was entered. HEIDI does not dispute that the same logic would have applied to Defendants' privilege review, and would not have contested a similar argument had Defendants made one. But Defendants made no such argument — not in a motion to the Court, not in a request for extension of time, and not in correspondence with HEIDI's counsel. They did not seek a protective order, did not propose one, and did not join HEIDI's effort until after HEIDI had identified the problem, drafted the initial order, and raised it with Defendants. The CPO that resulted addresses HEIDI's rolling production and privilege review obligations; it says nothing about Defendants'. A legitimate justification that was never asserted, in any forum, at any time, cannot be retroactively imported into the record to excuse a four-month logging failure. The Rules provided Defendants with mechanisms to raise this concern — a motion for protective order, a motion for extension of time, a request for a discovery conference — and Defendants used none of them.

Third, and independently, Rule 34(b)(2)(B) required Defendants' February 20 responses to state, for each request as to which production was not being made, the time by which production would occur. The 2015 amendment to Rule 34 made this obligation explicit precisely to prevent

the situation now before the Court — a responding party that asserts objections, produces nothing, and leaves the requesting party with no basis for knowing when, if ever, production will come. Defendants' February 20 responses stated no production date for any request. That omission is an independent Rule 34 violation that exists regardless of the CPO, regardless of the PHI/PII issue, and regardless of whether any documents were ultimately withheld on privilege grounds.[13]

> **6.** *Defendants Ignored the MTC's Crime-Fraud, Constitutional Tort, and Sword-Shield Privilege Exceptions.* MTC pp. 9-10.

The Response does not mention the crime-fraud, constitutional-tort, and sword-shield exceptions to the privileges they assert. Defendants' failure to address these exceptions in their Response must be treated as a concession.

### C. **The MTC's Contest of Defendants Non-Privilege Objections, Including Boilerplate, Remains a Live Controversy in Need of Prompt Resolution**

The MTC contends that all of Defendants' non-privilege objections, most of which are boilerplate, were waived or otherwise inapplicable. Defendants' sole response was that "neither HHSC nor OIG have deliberately withheld non-privileged documents based on their objections at this time." Resp. p.8. The "at this time" caveat renders the response meaningless. As of the date of this Reply, it is impossible to know what documents have been withheld on the basis of non-privilege objections when no documents and/or ESI have been produced.

Moreover, even while claiming not to have deliberately withheld documents on the basis of non-privilege objections, Defendants expressly state – as they did with respect to their "privilege" objections – that they only "committed to produce **certain documents** that could

---

[13] USCS Fed Rules Civ Proc R 34 Notes of Advisory Committee on 2015 Amendments. ("The production must be completed either by the time for inspection specified in the request or by another reasonable time specifically identified in the response. When it is necessary to make the production in stages the response should specify the beginning and end dates of the production.").

validly be withheld in order to allow this matter to progress." MTC p. 8 (emphasis added). They expressly reserve the right to withhold documents "pursuant to State Defendants' valid and appropriate objections" as discovery proceeds. *Id.* In other words, they continue to hold onto their objections and will deploy them as and when desired. Defendants' failure to respond to the MTC on these non-privilege objections reflects a strategic choice to rely entirely on their frivolous premature / mootness defense rather than engage the merits.[14]

### III. The Response Fails to Address the Interrogatory Issues Raised in the Motion.

The Response devotes two pages to the interrogatory portion of the Motion, but addresses only the threshold procedural question of whether a motion to compel is available at all. It says nothing about the specific deficiencies HEIDI identified — the internal OIG contradiction between ROG answers and RFP responses, the absence of withholding statements, and the unresolved uncertainty about the completeness of the ROG answers. Each of these is an independent ground for relief that the Response leaves entirely unaddressed and are therefore conceded. MTC 25-32.

The Response argues that Rule 37 authorizes compelling only *answers* to interrogatories — not challenges to *objections* — and that because neither HHSC nor OIG "refused to answer" any interrogatory, there is nothing to compel. (Resp. at 9–10.) This argument misreads the Rule. Rule 37(a)(3)(B)(iii) permits a motion to compel where a party "fails to answer an interrogatory submitted under Rule 33." Rule 37(a)(4) provides expressly that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." A

---

[14] *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014) (boilerplate objections without specific explanation violate Rule 34 and may be deemed waived); *Mullenix v. Univ. of Tex.*, 2021 U.S. Dist. LEXIS 79965, at *9 (W.D. Tex. Apr. 26, 2021) ("It is well-established that parties cannot make general or boilerplate objections to discovery requests.' [citation] Examples of these general objections include: 'Defendant objects to this Request, as it is overly broad and vague' and 'Defendant objects to this Request to the extent it seeks discovery of information that is irrelevant and not proportional to the needs of the case.' *Id.*").

response that withholds responsive information behind a non-specific objection is not a complete answer.[15]

The Response suggests that the absence of a withholding statement in Defendants' ROG responses is itself proof that no information was withheld. The argument, in substance, is: "we did not say we were withholding anything, therefore we were not." This argument is foreclosed by Defendants' own response language. Having chosen the "subject to" formulation in every objection-carrying response, Defendants cannot now tell the Court that the absence of a withholding statement means nothing was withheld.[16] Indeed, "claiming that the information is privileged or subject to protection" as work product is the very means of informing a party that information *is* being withheld. Fed. R. C. P. 26(b)(5)(A). The "subject to" language is the predicate of the withholding-statement obligation. It requires a party that withholds information based on a privilege claim to describe what is being withheld in a manner that enables the opposing party to assess the claim.[17] Defendants' failure to tell HEIDI what was actually being withheld pursuant to those objections violates the rule. The appropriate formulation, had Defendants genuinely withheld nothing, was not "subject to" the privilege objections, but rather "notwithstanding the foregoing objections, all responsive information is provided herein."

---

[15] *See, Crow v. Propetro Servs.*, 2016 U.S. Dist. LEXIS 194779, at *4-5 (W.D. Tex. June 6, 2016) (quoting Fed. R. Civ. P. 33(b)(3)-(4) and Fed. R. Civ. P. 37(a)(4)) (noting that interrogatories objected to without "specificity," are incomplete, and objections are waived).

[16] *See Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014) (condemning "subject to and without waiving" responses as "not consistent with the Federal Rules of Civil Procedure" and noting that such responses "make it impossible for the Court and the requesting party to know whether the responding party is withholding documents pursuant to those objections").

[17] Fed. R. Civ. P. 26(b)(5)(A) ("When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.").

The Response argues that OIG's June 17, 2026 production of 18,190 pages renders the interrogatory portion of the Motion premature or moot. It does not. The production format makes it impossible to confirm whether the six documents identified in ROG 5 – or the numerous other documents the Rog responses anonymously incorporated – are present. The June 17 production consists entirely of Bates-numbered PDF files with no metadata, no load files, no custodian identification, and no cross-referencing to the specific ROG or RFP that any document is responsive to. HEIDI cannot search for documents by date, author, recipient, or subject matter. Defendants bear the burden of demonstrating mootness and cannot discharge that burden when their own production format forecloses the verification that mootness requires.

## IV. HHSC and OIG Are Subject to a Single Production Obligation for Documents Within Their Joint Control.

Defendants argue that HHSC and OIG are separate entities and cannot be required to produce each other's documents. (Resp. at 9–11.) This misses the point. Rule 34's "control" standard is not an organizational independence test. It asks whether a party has "the legal right, authority, or ability to obtain documents upon demand." Defendants' own statutory authority — which requires HHSC to provide assistance to OIG "when deemed necessary to enable the OIG to accomplish its duties" (Tex. Gov't Code § 544.0101) — establishes precisely that right.

## V. The Asymmetric Prejudice to HEIDI Warrants Prompt Judicial Action.

The Response invites the Court to allow rolling production to proceed on Defendants' phantom schedule. The Court should consider the full context of that invitation.

HEIDI served its RFPs on December 14, 2025 — 6 ½ weeks before Defendants served their own RFPs on HEIDI on January 30, 2026. HEIDI responded to Defendants' RFPs on April 7, 2026, timely initiated and drove the Protective Order process to entry, and has begun producing documents in compliance with the schedule embedded in the CPO. Defendants' production, by contrast, is barely underway: a first tranche of 18,190 pages from OIG only, with more OIG

documents and all of HHSC's production still "forthcoming." HEIDI is actively engaged in discovery without the benefit of documents that should have been in its hands months ago.

The Court should impose a strict deadline for HHSC and OIG to produce *all* documents requested in Plaintiff's RFPs and all information requested in Plaintiff's ROGs, with all privileges and objections waived and no withholding allowed. Plaintiff also requests that the Court defer Plaintiff's production schedules under the CPO until after Defendants' production is complete.

## VI. Attorney's Fees Are Mandatory Under Rule 37(a)(5)(A).

Rule 37(a)(5)(A) mandates that the Court award attorney's fees if the party "provided or permitted the discovery . . . after the motion was filed," unless the failure to produce was "substantially justified" or "other circumstances make an award of expenses unjust." Neither exception applies. OIG's June 17 production was made *after* the Motion was filed, is virtually unusable, and does not resolve the issues in the Motion to Compel. The mandatory language of the Rule requires a fee award to Plaintiff.

Defendants argue that fees are unjust because HEIDI "knew" production was forthcoming. As reflected in the foregoing chronology, the record does not support this characterization. HEIDI exhibited extreme patience trying to get resolution of the Motion to Compel issues, all to no avail.

Respectfully submitted,

**WATT LAW FIRM, P.C.**

/s/ Edward P. Watt
Edward P. Watt
State Bar No. 20976500
edwatt@wattlaw.com
800 Hwy. 290 West
Building A, Suite 500
Dripping Springs, Texas 78620
(512) 894-4404  (Phone)
(512) 858-0770  (Fax)

**ATTORNEYS FOR PLAINTIFF**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 26th day of June, 2026, a true and correct copy of the foregoing has been served on all parties via email and/or e-service.

/s/ Edward P. Watt
Edward P. Watt